**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CRIMINAL ACTION NO. 05-39-DLB-CJS**

**UNITED STATES OF AMERICA**                                                    **PLAINTIFF**


**v.**                           **REPORT AND RECOMMENDATION**


**JAMES KEVIN MEGET**                                                           **DEFENDANT**


\* \* \* \* \* \* \* \* \* \*

On June 5, 2018, this matter came before the Court for a Final Revocation Hearing on the United States Probation Office's Report that Defendant James Kevin Meget had violated conditions of his supervised release. Defendant was present in Court and represented by Attorney David Fessler and the United States was represented by Assistant United States Attorney Laura Voorhees. U.S. Probation Officer Allison Biggs was also present for this proceeding.

At the final hearing, Defendant admitted to the charged violations. As discussed below, testimony was presented and the Court received evidence on the issue of sentencing. Thereafter, the matter was taken under submission by the undersigned for preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and 18 U.S.C. § 3401(i). *See also United States v. Waters*, 158 F.3d 933, 936 (6th Cir. 1998). For the reasons that follow, it will be recommended that Defendant be found to have violated conditions of his supervised release, that his supervised release be revoked, and that he be sentenced to a term of 9 months of imprisonment, with a lifetime term of supervised release to follow.

## I.      BACKGROUND

### A.      Procedural History

On June 3, 2005, Defendant James Kevin Meget pleaded guilty to knowingly possessing visual depictions of a minor engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4)(B).  (*See* R. 1; R. 17).  On September 28, 2005, the presiding District Judge sentenced Mr. Meget to 120 months of imprisonment, followed by a lifetime term of supervised release.  (*See* R. 25).  In addition to the Standard Conditions of Supervision, Special Conditions of Supervision were included, as reflected in the Judgment. (*See* R. 25).  Defendant served his term of incarceration and began his term of supervised release on January 9, 2014. (*See* R. 51).  On January 23, 2014, the Court modified Defendant Meget's conditions of supervised release, with the agreement of Mr. Meget, to include the Eastern District of Kentucky's standard sex offender conditions. (*See* R. 31).

On May 9, 2014, three months following his commencement of supervision, Defendant's supervised release was revoked after the Court found he violated the conditions of his release by viewing pornography, using a computer or other electronic device with access to an "on-line computer service" without the approval of the probation officer, and associating with a person engaged in criminal activity or with a person convicted of a felony without the permission of the probation officer.  (*Id.*).  As a result of the violations, Mr. Meget was sentenced to a 6-month term of imprisonment, followed by a lifetime term of supervised release.  (R. 44).

Defendant was subsequently released from custody, and on November 6, 2014, began his current term of supervised release.  On November 27, 2017, Mr. Meget was permitted to obtain a cell phone capable of accessing the internet with the understanding that the phone would be monitored. (*See* R. 51).  And on November 28, 2017, the Court modified Mr. Meget's conditions

2

of supervised release to allow him to possess or use a device capable of creating pictures or videos, provided it is only utilized to capture images of structures, scenery, nature and animals. (R. 45).

On April 27, 2018, U.S. Probation Officer Allison Biggs filed a Supervised Release Violation Petition and a Violation Report charging Defendant with violating conditions of his supervision. (R. 46; R. 51). Specifically, Officer Biggs reported that on April 16, 2018, she and U.S. Probation Officer Stacey Suter conducted an unannounced home visit due to the interruption of RemoteCom monitoring on Mr. Meget's permitted cell phone. (R. 51, at 2). With Defendant's permission, the officers took possession of the phone to perform a search. There were no violations observed on this phone. However, Officer Suter also located an additional, unauthorized phone during the home visit. The Violation Report indicated that initially Mr. Meget stated the phone belonged to his boyfriend, Larry. However, when Mr. Meget sent Larry a text message in the presence of the probation officers, it did not show up on the phone that allegedly belonged to Larry. Mr. Meget was questioned and stated he thought Larry had two phones but was not really sure to whom the phone belonged. Officer Biggs advised that she would take the phone to the probation office and requested that Larry contact the probation office if the phone belonged to him. The phone was subsequently searched with Larry's consent. (*Id.*). The Violation Report further asserted that the following day on April 17, 2018, Officer Suter met with Mr. Meget for the purpose of discussing this additional cell phone allegedly belonging to Larry. Mr. Meget once again stated that the phone belonged to Larry.

On April 23, 2018, Mr. Meget reported to the probation office and met with Officer Biggs as well as Officer John D'Alessandro. The Violation Report asserts that Mr. Meget then admitted to Officers Biggs and D'Alessandro that he purchased the unauthorized cell phone at Walmart the previous year, before he was given permission by the Probation Office in November 2017 to obtain

a cell phone capable of accessing the internet. (*Id.* at 3). Mr. Meget admitted to using the phone to access the internet and maps, and to look for and view pornography. (*Id.*). Mr. Meget further advised that he met his boyfriend, Larry, through a website he accessed on the phone. Mr. Meget advised that he gave this phone to Larry around November 2017. Mr. Meget denied viewing any child pornography. (*Id.*). The Violation Report further states that Mr. Meget told the probation officers that he would not search for child pornography, but would view it if it were presented to him. (*Id.*).

Upon receipt of the report of U.S. Probation Officer Biggs, the presiding District Judge entered an Order for the issuance of a Summons and referred the matter to the undersigned for hearing and preparation of a Report and Recommendation (R. 46). Based upon the alleged conduct reported in the April 27, 2018 Violation Report, Defendant Meget stands before the Court charged with three violations:

> **Violation No. 1:**   The defendant shall not possess or use a computer or any electronic device with access to any "on-line computer service" at any location (including place of employment) without the prior written approval of the probation officer. This includes any Internet Service provider, bulletin board system, or any other public or private network or email system. (Grade C violation).

> **Violation No. 2:**   The defendant shall not possess, view, listen to, or go to locations where any form of pornography, sexually stimulating performances, or sexually oriented material, items, or services are available. (Grade C violation).

The first alleged violation is based on Mr. Meget's April 23, 2018 statement to Officer Biggs and Officer D'Alessandro that he purchased a cell phone, without the knowledge or permission of the probation office, for the purpose of accessing the internet. The second alleged violation is based on Mr. Meget's statement that he utilized this unauthorized cell phone to go to locations on the internet for the purpose of viewing pornography.

**Violation No. 3:** The defendant shall participate in a program for treatment of mental health/sexual disorders; shall undergo a sex offender risk assessment, psychosexual evaluation and/or other evaluation as needed; shall be subject to periodic polygraph examinations and/or Computer Voice Stress Analysis (CVSA) testing, at the discretion and direction of the probation officer; and, shall follow the rules and regulations of the sex offender treatment program as implemented by the probation office. (Grade C violation).

The third alleged violation asserts that Mr. Meget has been participating in sex offender treatment with Dr. Edward J. Connor since November 2014. Group sessions are held twice per month. At each group session, Mr. Meget is questioned as to whether he has viewed pornography, as well as whether he has been compliant with the terms of his supervision and the instructions of his probation officers. Based upon his April 23, 2018 statement to Officer Biggs and Officer D'Alessandro that he purchased and used the unauthorized cell phone to access the internet to look for and watch pornography, the third violation charges Defendant with failing to comply with the sex offender treatment program by not making truthful disclosures in treatment about this conduct.

**B.    Final Hearing**

At the June 5, 2018 call of this matter for Final Revocation Hearing, counsel for Defendant informed the Court that Mr. Meget wished to admit to the violations as charged in the April 27, 2018 Violation Report (R. 51). As to the question of appropriate sanctions, Attorney Fessler indicated Defendant wished to present the testimony of his treating psychologist, Dr. Connor, concerning Defendant's treatment, to inform the Court's consideration in fashioning an appropriate sentence.

**1.    Colloquy**

The undersigned explained to Defendant, *inter alia*, that there has been no decision made regarding an appropriate sanction if he admitted to the charged conduct. Furthermore, the undersigned explained that while a sentencing recommendation will be made, it is ultimately Judge Bunning's decision as to the final disposition of the charges and sentence to be imposed. Defendant

5

acknowledged his understanding and stated it was his desire to admit to all three violations set forth in the April 27, 2018 Violation Report.  Specifically, Mr. Meget admitted under oath that the conduct alleged in the three violation charges as set forth in the Violation Report was accurate.

With respect to the first and second charges, Mr. Meget admitted that he purchased the unauthorized cell phone in April 2017 without the knowledge or permission of the Probation Office. Mr. Meget further admitted that he used this second cell phone to search for and view pornography and that this conduct violated the subject conditions of his supervision.

With respect to the third charge, Mr. Meget acknowledged that as a condition of his supervised release, he is required to participate in a program for the treatment of mental health and sexual disorders and to follow the rules and regulations of the sex offender treatment program.  Mr. Meget acknowledged that he has been participating in sex offender treatment with Dr. Connor since approximately November of 2014.  With respect to the group sessions that are held through Dr. Connor's office, prior to each group session participants are questioned as to whether they have viewed pornography and are being compliant with their probation officers.  Mr. Meget admitted that he was not forthcoming with the facts set forth in violations 1 and 2 and, to that extent, he has not been participating and compliant with his treatment program, which is required as a condition of his supervised release.

In order to revoke a term of supervised release, the United States must prove by a preponderance of the evidence that a defendant violated a condition of his supervised release.  18 U.S.C. § 3583(e)(3).  Upon review of the entire record, including the parties' briefings and submissions and the evidence introduced at the June 5, 2018 Final Revocation Hearing, the undersigned is satisfied from the dialogue with the Defendant that he understands the nature of the violations as charged, he has had ample opportunity to consult with counsel, and that he enters his

6

admissions to the violation charges knowingly and voluntarily. The evidence establishes—and Mr. Meget concedes—that he used the unauthorized cell phone obtained in April 2017 to access the internet to look for and view pornography, and then failed to disclose this information in treatment. Based on Defendant's admissions to the violations, and for the reasons set forth below, it will be recommended that the District Judge find Mr. Meget violated the conditions of his supervised release as charged in the April 27, 2018 Violation Report. Mr. Meget has waived his right to allocute before the District Judge but did not waive his right to appeal (*see* R. 58). Therefore, he was also advised of his appellate rights, since he will not be appearing before Judge Bunning prior to final sentencing.

### 2.    Witness Testimony

Upon conclusion of the Court's colloquy with Mr. Meget, defense counsel then called Dr. Connor to testify for purposes of assisting the Court with sentencing. Dr. Connor testified that he has been a licensed psychologist in the Commonwealth of Kentucky since 1996. (*See* Defendant's Exh. 1, *Curriculum Vitae* of Edward Connor). His practice deals with a variety of patients, including the sex offender treatment program where he conducts competency evaluations, psychosexual assessments, and sex offender risk assessments for the courts. He also has had a contract with the U.S. Probation Office since approximately 1998. He is a member of the Kentucky Psychological Association and the International Association for the Treatment of Sexual Abusers. The United States stipulated to Dr. Connor's credentials, and the Court recognized him as an expert witness.

Dr. Connor testified that the course of Mr. Meget's treatment through Dr. Connor's practice involved participation in both individual and group therapy, which alternated each week. Group sessions involve a mixture of treatment and education, and cover different topics relevant to

pornography obsessions and use of child pornography.  The individual sessions involve a deeper dive into latent issues from Defendant's past, including Defendant's struggle with different aspects of his sexuality since his adolescent years, as well as dealing with a history of depression and anxiety.

Dr. Connor testified that he first worked with Mr. Meget for approximately four months, shortly after Defendant was released from incarceration in February 2014.  Pursuant to requirements by the U.S. Probation Office, Dr. Connor then resumed treatment of Mr. Meget in November 2014, after he served a 6-month term of incarceration for his first supervised release violation.  Dr. Connor testified that Defendant's attendance at treatment was generally prompt and consistent, and Mr. Meget was an active participant in his therapy.  Mr. Meget completed the treatment required by the Probation Office in Fall 2017.  Dr. Connor testified that Mr. Meget then independently requested to continue treatment after that time.  Dr. Connor viewed Mr. Meget's request as a positive sign.

Another positive change Dr. Connor observed over the course of treatment was Mr. Meget's increased comfort with, and expression of, his sexuality.  Dr. Connor testified that Defendant has struggled with his homosexuality and did not feel comfortable expressing that socially as an adolescent growing up in the Northern Kentucky area, for various reasons.  In Dr. Connor's opinion, Defendant had, as a result, experienced a developmental arrest in terms of his attraction.  While children going through puberty or prepubescence are coming to terms with their sexuality and attraction, Defendant was unable to express his and instead experienced a great deal of shame and social humiliation.  As a result, it took quite some time for Mr. Meget to openly discuss his homosexual and pedophilic attractions with Dr. Connor.

Dr. Connor testified that as Defendant progressed through treatment, Mr. Meget became more comfortable with his homosexuality.  Defendant also formed a romantic homosexual

relationship.  Dr. Connor testified that he cannot say that he thinks it is the healthiest relationship for Mr. Meget per se, but it was nonetheless a relationship with the same gender that allowed Mr. Meget to be able to explore other aspects of himself and realize how his discomfort with his homosexuality inhibited him from positive social growth and orientation.  This led to what Dr. Connor believes is a progression away from child pornography since Mr. Meget began treating in 2014.  Dr. Connor theorized that when Mr. Meget began having more adult homosexual experiences, those experiences sort of perpetuated his interest into adult males as opposed to more involvement with child pornography, which was where he was when Dr. Connor first met him.

Despite the positive changes observed by Dr. Connor, he also testified that Mr. Meget had not been completely forthcoming during treatment.  Dr. Connor testified, "[p]roblematic, though, is that he was addicted to pornography.  He was obsessed with pornography. And that was an issue that he did not fully disclose to me."  Dr. Connor testified that if a patient relapses, it is important for him to know about it so he can assist with further treatment.  Dr. Connor testified that Mr. Meget's failure to report his relapses was problematic to Mr. Meget's treatment and recovery. Further, Dr. Connor testified that this very obsession with pornography is what necessitated Mr. Meget's appearance before the Court on revocation charges—and continues to be an ongoing problem for Mr. Meget.  It was an obsession strong enough that Mr. Meget would lie to his probation officer and to Dr. Connor about it.  Dr. Connor further testified that he wants to be clear that, while there was an obsession, there was also a desire to look at it.  Therefore, Mr. Meget's obsession with pornography was not limited strictly to an uncontrollable obsession or an impulse control disorder so to speak; the obsession was also perpetuated by an element of desire or volition.

When asked whether he would equate Mr. Meget's relapses to those experienced by drug addicts, Dr. Connor agreed that when he worked in substance abuse diagnoses in the past, the

"relapse issue" was a common problem. Dr. Connor further testified that there is an "added layer" for someone who is treating with him while on supervised release. These patients are on "the horns of a dilemma." While Dr. Connor is frequently able to help such patients overcome their child pornography obsessions, patients continue to struggle with adult pornography obsessions. Pursuant to the conditions of their supervision, they are not allowed to be using any type of adult pornography. Dr. Connor testified that he "very much agrees with" this condition, because every case he has ever had involving child pornography starts with adult pornography. Dr. Connor added that, subsequent to his training with drug addiction, he became more trained in the treatment of sexual abusers. He testified that with the onset of the internet and the uptake of child pornography cases in the 1990s, it was obvious to him that each one started with adult pornography. From there, patients would fall into a "downward spiral" to the underage pornography, especially if there was some element of developmental arrest in their own sexuality or some type of sexual abuse.

Dr. Connor testified that his patients who are on supervision face a dilemma in their treatment because if they choose to talk about potential relapsing openly, they risk being sent back to jail or prison for violating that condition of supervision. Dr. Connor testified that this puts the clinical element of treatment in a bit of a double bind. His patients know they need help, but yet they are afraid to say exactly how bad it is or what is going on because if they do, they could be sent back to prison. As a result, every group session, which starts out questioning whether the patients are looking at pornography or are complying with the condition of supervision, presents a "dilemma" in terms of effective treatment.

When asked whether returning to incarceration will interrupt Mr. Meget's treatment, Dr. Connor testified that he does not want to say there should not be consequences, because he does believe consequences are important when people are on probation. However, from a treatment

10

standpoint, Mr. Meget's conduct has been brought to light.  Now is the time for Mr. Meget to really come completely clean and open up about his obsession with pornography.  Dr. Connor testified that it is his understanding the pornography at issue here was not child pornography, and he has no knowledge that Mr. Meget has viewed any child pornography during the relevant time period. When asked whether he is concerned about Mr. Meget returning to the prison system in terms of accessibility of pornography, Dr. Connor testified that pornography is accessible and available in prison, but not to the extent that it would be on the outside.

Upon questioning by the United States, Dr. Connor testified that the conditions of Mr. Meget's supervision were appropriate, and he personally agrees that the prohibition on viewing pornography is a proper condition to place on someone with Mr. Meget's condition.  He believes that Mr. Meget currently meets the criteria for persistent depressive disorder of a mild grade, and he does believe there is also a level of anxiety around his sexuality that needs to be further addressed.  Dr. Connor testified that Mr. Meget was allowed to have just one phone with limited internet connectivity as a privilege because it appeared he was progressing and doing well, and neither he nor the Probation Office was aware Mr. Meget had previously obtained an unapproved cell phone which he used to search for and view pornography in violation of his conditions of supervision.

In relation to child pornography, Dr. Connor testified that he thought Defendant had an obsession with underage pornography when he first began treatment, but he believes Mr. Meget has progressed past child pornography and back into adult pornography.  Dr. Connor admitted that he can only go by what Mr. Meget is telling him; Dr. Connor has not re-tested Mr. Meget as he did in 2014.  Dr. Connor admitted that Mr. Meget has not been completely forthcoming during treatment. Dr. Connor testified that, until he received an email from the Probation Office in April of 2018, he

11

was not aware Mr. Meget admitted to paying another individual to send him nude photos. Nor was Dr. Connor aware that Mr. Meget had Facebook accounts, a twitter account, and a second email address he was not supposed to have. Dr. Connor admitted that, as a result, during the approximate 24 group sessions Defendant has attended over the past year, Defendant was not being truthful when he represented that he was being compliant with the conditions of his supervision. Dr. Connor admitted that it is possible Mr. Meget has been lying about his reduced interest in child pornography as well. Dr. Connor stated that he does not have any other independent way to make a determination that Mr. Meget is telling the truth, so if Mr. Meget is telling him that he has not relapsed or viewed child pornography, that could easily be false. Dr. Connor testified that people with addictions lie, steal, and manipulate to get what they want, and that such behavior is not uncharacteristic of patients Dr. Connor has treated who have addictions. Dr. Connor testified that the Probation Office has not, however, told him that they found any pictures of child pornography or anything to do with child pornography on either of Mr. Meget's cell phones during the search of the phones.

## II.    SENTENCING

### A.    Legal Standard and Sentencing Guidelines

A term of supervision may be revoked after finding a defendant has violated a condition of supervision. *See* 18 U.S.C. § 3583(e)(3). The Court is mindful of the need to impose a sanction for violation of supervision that is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a). *See id.* § 3583(e). In determining an appropriate sanction, the applicable Sentencing Guidelines policy statements, *see United States Sentencing Commission Guidelines Manual* Chapter 7, Part B, and certain factors set out in 18 U.S.C. § 3553(a)[1] must be considered.

---

[1] In supervised release proceedings, 18 U.S.C. §§ 3553(a)(1), (a)(2)(B)-(D), and (a)(4)-(7) of the sentencing factors are to be considered. *See United States v. Williams*, 333 F. App'x 63, 69 (6th Cir. 2009).

Here, as Defendant's underlying criminal offense was a Class C felony, the maximum statutory term of incarceration upon revocation of his supervised release is 2 years. *See* 18 U.S.C. § 3583(e)(3). Section 7B1.4(a) of the Sentencing Guidelines suggests a revocation range of imprisonment of 6 to 12 months, based upon Defendant's criminal history category of IV and his highest supervised release violation being a Grade C violation. (*See* R. 23; R. 51, at 4). Defendant may also be placed back on supervised release following any term of imprisonment that were to be imposed upon revocation. Defendant is subject to a lifetime maximum term of supervised release. (*See* R. 25, at 3). *See also* 18 U.S.C. § 3583(k).

### B.    Arguments of Counsel Regarding Sanctions

Following the close of testimony, counsel presented their respective positions concerning an appropriate disposition of this matter. First, counsel for the United States advocated for a sanction of 12 months of imprisonment, which is at the high end of the range called for under the U.S. Sentencing Guidelines. The United States submitted that the high end is appropriate in this situation due to Defendant's pattern of conduct. This is Defendant's second revocation proceeding, the first revocation proceeding occurring only a few months after Mr. Meget was released from incarceration, and the underlying circumstances of the alleged conduct at issue here being strikingly similar in nature to the conduct giving rise to the first revocation. The Government argued that these circumstances show Defendant has continued to violate the conditions of his supervision, and therefore anything below the sentence requested would not make the point that needs to be made to Mr. Meget that he needs to abide by the conditions of his supervision. Counsel for the United States added that a sanction at the high end of the Guidelines is also appropriate because of evidence that Defendant has exhibited a pattern of ongoing dishonest conduct. The Government argued that the instant case does not present circumstances where there was just one lie or one instance of bad

13

conduct; rather, the evidence presented indicates Mr. Meget has been lying to Dr. Connor as well as the U.S. Probation Office for over a year. Finally, counsel for the United States argued that Mr. Meget's term of supervision upon release from the recommended term of incarceration should continue as long as it possibly can.

In turn, defense counsel did not advocate a specific sanction but rather focused on a theory of mitigation. Counsel discussed the "dilemma" testified to by Dr. Connor and urged that Mr. Meget's sanctions be based upon the circumstances at hand and not upon any improper stigma that may be invoked due to Defendant's underlying conviction being a child pornography conviction. Defense counsel stated that the reason he decided to call Dr. Connor is that when the U.S. Probation Office recommended a sanction at the high end of the Guidelines, he felt like they were throwing in the towel on Mr. Meget. Defendant acknowledges he is not a saint, and has done some things wrong. Nonetheless, defense counsel wanted to point out to the Court that Dr. Connor testified he believed there has been some progress in Mr. Meget's treatment. While Mr. Meget still has an addiction to pornography, which admittedly resulted in violation of the conditions of his supervision, Dr. Connor believes there has been some progression away from child pornography. Turning to the subject of stigma, defense counsel stated that any case involving underlying charges of child pornography can sometimes cloud the issue. Defense counsel advocated a viewpoint that likened Defendant's addiction to an addiction to controlled substances, stating that people on drugs will lie, and the Probation Office would not have recommended a sanction at the high end of the Guidelines range for a person who relapsed from heroin. Counsel requested that the Court take that into consideration when deciding an appropriate sentence. Defense counsel had nothing further to offer with respect to the term of supervised release to follow.

### C.      Discussion

The United States requested and the Probation Officer recommended a sanction of 12 months' imprisonment, the high end of the Guidelines range.  Defendant requested that any sanction imposed be determined after due consideration of the fact that he struggles with a pornography addiction, similar to how the Court would view a defendant on supervision who struggles with an addiction to controlled substances.  Defendant also expressed concern that he not be sentenced based on any stigma associated with the fact that he has been convicted of a child pornography offense.  Having carefully considered the factors listed in 18 U.S.C. §§ 3583(e) and 3553(a), it will be recommended that Defendant be sentenced to a term of imprisonment of 9 months, with a lifetime term of supervised release to follow.

In support of the high end of the Guidelines, the Government pointed out this is Defendant's second revocation for violation conduct similar to his first revocation.  AUSA Voorhees noted Defendant has not been truthful for some time and this sentence is needed to impress upon Mr. Meget that this cannot continue.  In support of a lesser sentence, defense counsel explained that Mr. Meget suffers from a pornography addiction, noted that he was not found to be viewing child pornography, and that Dr. Connor testified Defendant has made progress in treatment by moving away from child pornography.

At hearing, Defendant admitted to obtaining an unauthorized phone, accessing the internet, viewing pornography, and having deceived both Probation and his treatment provider in the process. Defendant asked he not be punished more harshly than other addicts merely because his addiction is pornography.  The sanction recommended herein is similar to the type of penalties imposed on defendants facing revocation due to controlled substance relapses, in particular those not able to get their controlled substance issues under control despite treatment referral.  As discussed above, this

15

was Defendant's second placement on supervised release. Despite previously having his supervision revoked and having served a 6-month term of imprisonment, Defendant has been unwilling to incorporate the lessons learned from prior violations and again is charged with strikingly similar violations. In the context of defendants who experience a relapse of addiction to controlled substances, typically a defendant faces a sanction on the low end of the Guidelines range at their first formal revocation proceeding—just as Mr. Meget received a sanction at the low end of the Guidelines range for his prior violation in 2014. On subsequent violations, however—particularly when defendants do not accept responsibility or do not actively participate and comply with treatment—a sentence at the high end of the Guidelines range is more likely. Under this view, arguably the high end could be warranted here for Mr. Meget, as suggested by the United States and recommended by Probation.

Nonetheless, the Court recognizes that Defendant did accept responsibility by admitting to the violations and, unlike many controlled substance cases, his new term of supervision will be for his lifetime. Moreover, there was also no evidence found that Defendant viewed actual child pornography.[2] These considerations underlie the undersigned's recommendation of a 9-

---

[2] Dr. Connor did testify that it is his belief, based upon his treatment of Mr. Meget, that Mr. Meget is no longer susceptible to viewing child pornography. Defendant has not been charged here with having accessed and viewed child pornography, so it is unnecessary for the Court to accept or reject Dr. Connor's belief about Defendant's treatment progress. But it is noteworthy that Dr. Connor's belief is based on Mr. Meget's own representations and, given Defendant's course of supervision to date, there is reason to question his truthfulness. The evidence shows that despite being involved in a relationship and being more forthcoming with his homosexuality, the relationship did not stop Mr. Meget from obtaining the unauthorized cell phone and viewing pornography. Mr. Meget also failed to disclose this fact during his treatment sessions with Dr. Connor, and failed to disclose to Dr. Connor numerous social media accounts and other prohibited online activity. The evidence demonstrates that Mr. Meget has repeatedly lied about his conduct. Indeed, Dr. Connor acknowledged that it is possible Defendant is viewing child pornography and Mr. Meget simply has not told him. So Defendant will have to work hard to rebuild that trust with the Probation Office and his treatment providers.

To the extent Defendant is suggesting the sanction for his violations should be minimal or below Guidelines because his conduct did not involve viewing child pornography and he has progressed away from

month term of incarceration, the middle rather than the high end of the Guidelines range, as appropriate but not greater than necessary to deter future violations and provide Defendant the opportunity to absorb the importance of strict compliance to all terms of his supervision.[3]

It will also be recommended that Defendant be placed on a lifetime new term of supervision to follow. Some brief comment about that further supervision is in order, as the Court is concerned that Defendant does not grasp the significance of his violation behavior.

Defendant needs to understand that the Probation Office is his best ally; it is there to help him and does not want to see him fail. Probation strives to support and assist defendants in their transition from incarceration to liberty, but it is a transition governed by court-imposed conditions to rehabilitate defendants while protecting the public. Conditions of release are not optional. For Defendant, they originated as a part of the sentence imposed by the Court for his underlying 2005 conviction. Defendant must learn to accept responsibility for his rehabilitation and transition by conforming his behavior so that he complies with the conditions of his release and by being

---

that, that suggestion is rejected. First, as noted, no evidence confirms this and Defendant's reputation for truthfulness is poor at this point. Second, such a view would minimize the importance that Defendant comply with the condition he not view any pornography and engage in treatment to get his adult pornography addiction under control. Assuming he has not viewed child pornography, he still accessed and viewed adult pornography, which for someone with his history carries a recognized risk. And Defendant did, in fact, tell the Probation Officers that he would view child pornography if it were presented to him. Dr. Connor, who is expertly trained in counseling of individuals with pornography addictions and pedophilia, opined that watching adult pornography can lead to a "downward spiral" to child pornography. Dr. Connor strongly agreed with the need for the condition that Mr. Meget refrain from viewing pornography generally and that his access to the internet be limited.

[3] Defendant expressed concern that his sanction not be unfairly influenced based on the stigma of having been convicted of a child pornography offense. A within Guidelines range sentence is being recommended for Mr. Meget, which is based upon his criminal history category and grade of the violation conduct. The fact that he was convicted of a child pornography offense goes more to the class of felony he was convicted of and the statutory maximum penalty upon revocation associated therewith. But as the recommended penalty is within the properly-calculated Guidelines range and presumed reasonable, *United States v. Vonner,* 516 F.3d 382, 389-90 (6th Cir. 2008) (en banc), no stigma of having been convicted of a child pornography offense has influenced the recommendation.

17

forthcoming with his probation officer and treatment providers, rather than focus his thoughts and actions on thwarting those conditions of supervision with which he disagrees and thinks should no longer apply to him. Those are not his decisions to make.

Mr. Meget needs to be forthcoming with Probation when the impulse or temptation to violate first occurs, before he acts on it. The Probation Office works diligently to try to assist like individuals with resources and treatment assistance. And Defendant must do the work involved with treatment and actively engage and not just go through the motions or select the treatment aspects he thinks helpful and that he is willing to participate in. Here, Mr. Meget instead chose to be deceptive for over a year, resulting in a breach of the Court's trust, despite having already served a term of incarceration for similar behavior. This suggests that either Mr. Meget thinks the conditions of his supervision are unnecessary and that viewing adult pornography is not a problem for him in his treatment and rehabilitation, or that he knows that viewing pornography is a problem but does not want to suffer the consequences of noncompliance. Defendant pointed to Dr. Connor's testimony about the "dilemma" defendants associated with child pornography face. The undersigned does not see it quite the same way. The only "dilemma" that has been created is in Defendant's own mind, in that he thinks he is encouraged to be deceptive because he feels compelled to violate his conditions of supervision but does not think he should have to admit to that for fear of being penalized. There is no dilemma: Defendant needs to be forthcoming with the Probation Office so that they can do their job of assisting and supervising his rehabilitation and transition of living in the community while requiring compliance with supervision to maintain public safety.

Whatever the motivation and/or justification for obtaining a cell phone to access the internet and view pornography and then not disclose the behavior, it demonstrates he is not engaged in trying to address his pornography addiction. U.S. Probation Office will determine whether he is ready for

18

such privileges based upon his course of supervision and after consultation with his treatment provider. By taking that decision in his own hands due to either lack of impulse control over his addiction or because he does not think the associated risk applies to him, that led him to other violative conduct – being deceptive. Such an attitude and approach toward supervision is not going to serve Mr. Meget well in the long term. Supervised release is designed to assist a defendant to change the course of his life and make good decisions. Part of that process requires strict compliance with *all* conditions of supervised release, not just those a defendant deems important. Upon his further release, if Mr. Meget works hard to abide by his conditions, he will gradually earn back the trust and privileges he forfeited as he demonstrates he is a good candidate to again receive them. But further violations, particularly those involving unapproved devices or not being forthcoming with the Probation Office and treatment providers, after having served a second term of imprisonment with this second revocation, will not be looked upon favorably.

A few final matters. Defendant has requested that he be placed at the Bureau of Prisons facility in Ashland, Kentucky, if possible. The Court informed Defendant that it cannot require the Bureau of Prisons to house him at any particular location, but that a placement recommendation would be made on his behalf. Defense counsel also requested that the Court allow Mr. Meget to self-surrender if the Court believed it would be appropriate. The U.S. Probation Officer had no objection to Defendant's release pending his self-surrender upon designation by the Bureau of Prisons. The Government did not object to self-surrender in light of the probation office's determination that self-surrender was appropriate. The Court cautioned Defendant that he remains on supervised release and must continue to abide by all conditions thereof, including the requests of the probation office. Following the Final Revocation Hearing, Defendant was released pending his self-surrender upon

designation by the Bureau of Prisons, with Defendant confirming he understands he remains subject to all terms and conditions of supervision in the interim.  (R. 57).

## III.    CONCLUSION AND RECOMMENDATIONS

In summary, after a thorough review of the testimony and evidence presented at the June 5, 2018 evidentiary hearing, Defendant's Presentence Investigation Report, the factual circumstances of the violations, the § 3553(a) factors, the advisory Sentencing Guidelines, Defendant's course of supervision, the arguments of defense counsel, and the entire record,

**IT IS RECOMMENDED** that

1)     following the expiration of the period for filing of Objections, the District Judge proceed to enter an Order with respect to this Report and Recommendation and an Amended Judgment, Defendant having executed a waiver of allocution (*see* R. 58);

2)     Defendant, **JAMES KEVIN MEGET**, be found to have **VIOLATED** his supervised release as set forth in Violations 1, 2, and 3 of the April 27, 2018 Violation Report  (R. 51);

3)     Defendant's supervised release be **REVOKED**;

4)     Defendant be sentenced to the custody of the Attorney General for a term of imprisonment of **NINE MONTHS,** with a **lifetime term of supervised release to follow** on the same conditions set forth in the Amended Judgment (R. 44);[4]

5)     Defendant's sentence be served at FCI Ashland, Kentucky, if possible; and

---

[4] At the Final Revocation Hearing the Probation Officer requested Defendant's conditions to be imposed in the Amended Judgment for this second revocation proceeding be updated to include the search condition language currently being imposed for defendants convicted of sex offenses.  However, following court the Probation Officer examined the conditions that were imposed in the Amended Judgment from the first revocation proceeding and observed that the wording of the search condition in that Amended Judgment (R. 44) is in fact the language currently being used by the Probation Office.

6)      Defendant be permitted to self-surrender to the institution designated by the Bureau of Prisons for service of his sentence.

Specific objections to this Report and Recommendation must be filed within **fourteen (14) days** of the date of service or further appeal is waived.  28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(2); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Dated this 27th day of August, 2018.



**Signed By:**

***Candace J. Smith***

**United States Magistrate Judge**

J:\DATA\S.R. violations R&R\05-39 Meget 2d R&R final.wpd